**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HO SANG YIM, AKA Alez Suk Peter Yim Yoon, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent*. | No. 17-70624 Agency No. A037-993-102 |

| | |
|---|---|
| ORLANDO VELASQUEZ GARCIA, *Petitioner*, v. WILLIAM P. BARR, Attorney General, *Respondent*. | No. 17-70670 Agency No. A073-986-839 |

RAUL BORGES BORBA-CARDOSO,
                    *Petitioner*,

            v.

WILLIAM P. BARR, Attorney
General,
                    *Respondent.*

No. 17-70742

Agency No.
A030-861-138

OPINION

On Petitions for Review of Orders of the
Board of Immigration Appeals

*Yim v. Barr*, 17-70624
Argued and Submitted June 5, 2020
Pasadena, California

*Velasquez Garcia v. Barr*, 17-70670
Submitted June 5, 2020[*]
Pasadena, California

*Borba-Cardoso v. Barr*, 17-70742
Submitted June 5, 2020[**]
Pasadena, California

Filed August 25, 2020

---

   [*] The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

   [**] The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Before: Consuelo M. Callahan and Sandra S. Ikuta, Circuit Judges, and Cathy Ann Bencivengo,*** District Judge.

Opinion by Judge Ikuta

SUMMARY****

**Immigration**

On petitions for review brought by Ho Sang Yim, Orlando Velasquez Garcia, and Raul Borges Borba-Cardoso, the panel deferred to the Board of Immigration Appeals' interpretation of "perjury," as used in the aggravated felony definition of 8 U.S.C. § 1101(a)(43)(S), and held that perjury under section 118(a) of the California Penal Code is an aggravated felony.

Each of the three petitioners was convicted of perjury under section 118(a) of the California Penal Code and then suffered adverse immigration consequences on the ground that he had committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(S), which includes "an offense relating to . . . perjury."

Applying the three-step categorical approach, the panel first explained that the BIA had interpreted the generic

---

*** The Honorable Cathy Ann Bencivengo, United States District Judge for the Southern District of California, sitting by designation.

**** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

definition of "perjury" to require that an offender (1) make a material false statement (2) knowingly or willfully (3) while under oath or affirmation or penalty of perjury (4) where an oath is authorized or required by law. The panel deferred to the BIA's determination, explaining that the BIA had surveyed the definitions of perjury recognized at common law, codified in state and federal statutes, and adopted by the Model Penal Code, and that the BIA reasonably settled on a definition compatible with those sources. The panel also rejected the argument that it was not reasonable for the BIA to omit a requirement that a statement be made in an official proceeding, explaining that the federal perjury statute supports the BIA's omission of a "proceeding" requirement, and that the BIA was not bound to adopt the definition used by a majority of the states.

At the second step of the categorical approach, the panel concluded that the elements of perjury under section 118(a) are: (1) a willful statement, (2) either (a) under oath in any of the cases in which the oath may be administered or (b) in writing under penalty of perjury in circumstances permitted by law, (3) of any material matter, and (4) which the person knows to be false.

At the third step, the panel concluded that the elements of section 118(a) and the elements of the generic federal definition are a categorical match. First, the panel concluded that there was no meaningful difference between section 118(a)'s requirement of "willful" intent and the BIA's requirement of "knowingly or willfully."

Second, with respect to the false-statement requirement, Borba argued that a person could be convicted under section 118(a) without making a *literally* false statement because

California law provides that an "unqualified statement of that which one does not know to be true is the equivalent to a statement of that which one knows to be false." The panel rejected that argument, concluding that the phrase "false statement" in the BIA's definition includes statements made by a declarant who is entirely ignorant of the statement's truth or falsity.

Third, the panel considered the contention that section 118(a) criminalizes more conduct than the BIA's generic definition because, in California, it is no defense that the accused did not know the materiality of the false statement. Rejecting that argument, the panel explained that the BIA's definition is in accord with the uniform principle that the declarant need not know the statement is material.

Finally, the panel considered the requirement that an oath, affirmation, or declaration under penalty of perjury be authorized or permitted by law. The panel rejected Yim's contention that there is a difference between being "authorized by law," as provided by section 118(a), and being "permitted by law," as provided by the BIA's generic definition. The panel explained that, even if there is some semantic different between the terms, Yim failed to establish a "realistic probability" that section 118(a) is applied more broadly than the generic offense.

Petitioners also argued that the offenses are not a categorical match because California law recognizes two affirmative defenses to perjury that are not incorporated into the federal generic offense. The panel rejected this contention, explaining that the existence or non-existence of affirmative defenses is irrelevant to the categorical approach,

and that neither of the statutes relied on by petitioners alter the statutory definition set forth in section 118(a).

## COUNSEL

Robert G. Berke (argued), Berke Law Offices Inc., Canoga Park, California, for Petitioner Ho Sang Yim.

Alejandro Garcia, Commerce, California, for Petitioner Orlando Velasquez Garcia.

Mario Acosta Jr., Law Offices of Mario Acosta Jr., Los Angeles, California, for Petitioner Raul Borges Borba-Cardoso.

Jessica A. Dawgert (argued), M. Jocelyn Lopez Wright, Song E. Park, and Andrew N. O'Malley, Senior Litigation Counsel; Keither I. McManus, Assistant Director; John F. Stanton, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

IKUTA, Circuit Judge:

We hold that the Board of Immigration Appeals (BIA) reasonably interpreted "perjury," as used in 8 U.S.C. § 1101(a)(43)(S), to mean an offense where "an offender make[s] a material false statement knowingly or willfully while under oath or affirmation [or penalty of perjury] where an oath is authorized or required by law." *Matter of Alvarado*, 26 I. & N. Dec. 895, 901 & n.11 (BIA 2016). Given this definition, we hold that perjury under section 118(a) of the California Penal Code is an "aggravated felony" because it is "an offense relating to . . . perjury." 8 U.S.C. § 1101(a)(43)(S).

I

This opinion addresses issues raised in three separate petitions for review: *Yim v. Barr*, No. 17-70624; *Velasquez Garcia v. Barr*, No. 17-70670; and *Borba-Carodoso v. Barr*, No. 17-70742. Each of the petitioners was convicted of perjury under section 118(a) of the California Penal Code and then suffered adverse immigration consequences on the ground that he had committed an "aggravated felony," namely, an "an offense relating to . . . perjury." 8 U.S.C. § 1101(a)(43)(S). The petitioners contend that perjury under section 118(a) is not an "aggravated felony" because it is not "an offense relating to . . . perjury." *Id.* We briefly summarize the facts relevant to each petition before addressing the petitioner's arguments.

A

Raul Borges Borba-Cardoso, a native and citizen of Portugal, was admitted to the United States as a lawful permanent resident in 1975. In 2004, Borba was convicted of perjury in violation of section 118(a) for testifying falsely during a judicial proceeding, and he was sentenced to three years in prison. The Department of Homeland Security (DHS) initiated removal proceedings on the ground that Borba had been convicted of an "aggravated felony." An immigration judge (IJ) found Borba removable as charged, and the BIA affirmed.

B

Orlando Velasquez Garcia is a native and citizen of Guatemala. He came to the United States on June 18, 1990. Once here, he amassed a significant criminal record, including a conviction for perjury in violation of section 118(a) for providing false information, under penalty of perjury, to the California Department of Motor Vehicles. In 2009, DHS charged Velasquez as removable on the ground that he was an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i).

An IJ found Velasquez removable as charged and denied Velasquez's requests for asylum, cancellation of removal, withholding of removal, and protection under the Convention Against Torture (CAT). The IJ ruled that Velasquez's perjury conviction was an "aggravated felony," rendering him ineligible for asylum and cancellation of removal, and the IJ denied Velasquez's requests for withholding of removal and

CAT protection on the ground that Velasquez had not made the requisite showing. The BIA affirmed.

## C

Ho Sang Yim is a native and citizen of South Korea. He was admitted to the United States as a lawful permanent resident on June 3, 1983. In March 2010, Yim was arrested pursuant to a four-count complaint charging grand theft auto, identity theft, falsifying financial statements, and perjury. Yim, like Velasquez, was charged with providing false information, under penalty of perjury, to the California Department of Motor Vehicles. Yim eventually pleaded nolo contendere to one count of perjury in violation of section 118(a), and in December 2011, DHS charged Yim as removable for having committed an "aggravated felony." An IJ found Yim removable as charged, and the BIA affirmed.

## II

The term "aggravated felony" covers "offense[s] relating to . . . perjury . . . for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(S). An alien convicted of an "aggravated felony" is removable, 8 U.S.C. § 1227(a)(2)(A)(iii), and is also ineligible for asylum, 8 U.S.C. § 1158(b)(2)(A)(ii), (B)(i), and cancellation of removal, 8 U.S.C. § 1229b(a)(3). The question here is whether perjury under section 118(a) of the California Penal Code is "an offense relating to . . . perjury." 8 U.S.C. § 1101(a)(43)(S). To answer this question, we apply the categorical approach from *Taylor v. United States*, 495 U.S.

575 (1990).[1]  The categorical approach prescribes a three-step process for determining whether an offense is an "aggravated felony."

First, we must identify the elements of the generic federal offense, *Renteria-Morales v. Mukasey*, 551 F.3d 1076, 1081 (9th Cir. 2008), in this case, "perjury," 8 U.S.C. § 1101(a)(43)(S).  We "defer to the BIA's articulation of the generic federal definition 'if the statute is silent . . . and the BIA's interpretation is based on a permissible construction of the statute.'"  *Renteria-Morales*, 551 F.3d at 1081 (quoting *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005)); *cf. United States v. Garcia-Santana*, 774 F.3d 528, 542–43 (9th Cir. 2014).  An interpretation is permissible so long as it is not "clearly contrary to the plain meaning of the statute." *Parilla*, 414 F.3d at 1041.

Second, we must identify the elements of the specific crime of conviction, *Renteria-Morales*, 551 F.3d at 1081, here, section 118(a) of the California Penal Code, Cal. Penal Code § 118(a).  In doing so, we will "not defer to the BIA's interpretation of state law," *Renteria-Morales*, 551 F.3d at 1081, because the BIA "has no special expertise . . . in construing state . . . statutes," *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc).  To determine the elements of a state statute, "we may consider the interpretation of the statute provided by state courts." *United States v. Perez*, 932 F.3d 782, 785 (9th Cir. 2019).

---

[1] Because we conclude that all of the conduct criminalized by section 118(a) constitutes "an offense relating to . . . perjury," we need not apply the modified categorical approach.  *See, e.g.*, *Shepard v. United States*, 544 U.S. 13, 25–26 (2005).

Third, we compare the statute of conviction to the generic federal offense to determine "whether the specific crime of conviction meets the . . . definition of an aggravated felony." *Renteria-Morales*, 551 F.3d at 1081. Here, unlike in other cases, the state offense need not criminalize the same amount of conduct (or less) as the generic offense, because the INA refers to "an offense *relating to* . . . perjury." 8 U.S.C. § 1101(a)(43)(S) (emphasis added); *see, e.g.*, *United States v. Sullivan*, 797 F.3d 623, 638 (9th Cir. 2015); *United States v. Sinerius*, 504 F.3d 737, 743 (9th Cir. 2007). As we have recognized, the phrase "relating to," when used in this context, indicates that Congress intended to "cover[] a range of activities beyond" just the generic offense. *Albillo-Figueroa v. I.N.S.*, 221 F.3d 1070, 1073 (9th Cir. 2000). Therefore, the statute of conviction need only "stand[] in some relation, bear[] upon, or [be] associated with th[e] generic offense." *Sinerius*, 504 F.3d at 743.

## A

We begin with the first step of the categorical approach, which is to identify the elements of the generic crime of "perjury," as it is used in 8 U.S.C. § 1101(a)(43)(S), with due deference to the BIA. *See Renteria-Morales*, 551 F.3d at 1086. We presume that Congress intended the terms of a statute, including a list of offenses, to have their "contemporary meaning." *Taylor*, 495 U.S. at 598. The definition of the relevant offense in another section of the United States Code provides strong evidence as to Congress's intent, given Congress's presumed familiarity with that definition. *See, e.g.*, *Esquivel-Quintana v. Sessions*, 137 S. Ct., 1562, 1570–71 (2017). Accordingly, the BIA may "rely to a significant degree on the Federal definition of an offense, where available." *Matter of M-W-*, 25 I. & N. Dec. 748, 752

n.5 (BIA 2012) (citation omitted); *see Renteria-Morales*, 551 F.3d at 1086 (holding that "the BIA acted reasonably in deriving the definition of 'obstruction of justice' for purposes of § 1101(a)(43)(S) from the body of federal statutes imposing criminal penalties on obstruction-of-justice offenses"). Although probative, a parallel federal offense might not provide "the complete or exclusive definition" of a generic offense, *Esquivel-Quintana*, 137 S. Ct. at 1571; *cf. Garcia-Santana*, 774 F.3d at 535, and so a multi-jurisdictional analysis "can be useful insofar as it helps shed light on the common understanding and meaning of the federal provision being interpreted," even though undertaking such an analysis is "not required by the categorical approach," *Esquivel-Quintana*, 137 S. Ct. at 1571 n.3 (citation omitted).[2] In addition to state criminal codes, the Model Penal Code and scholarly commentary may shed light on the contemporary meaning of a term. *See, e.g.*, *Taylor*, 495 U.S. at 580; *Garcia-Santana*, 774 F.3d at 534.

1

Given our deference to the BIA's definition of generic federal offenses, *see, e.g.*, *Renteria-Morales*, 551 F.3d at 1081, we begin by recounting the development of the BIA's definition of "perjury." Before December 29, 2016, the BIA concluded that the federal perjury statute, 18 U.S.C. § 1621, established the generic definition of "perjury," as used in 8 U.S.C. § 1101(a)(43)(S). *See In Re Martinez-*

---

[2] To the extent we have implied that the categorical approach requires a multi-jurisdictional analysis, *see, e.g.*, *Garcia-Santana*, 774 F.3d at 534, that guidance has been superseded by *Esquivel-Quintana*, 137 S. Ct. at 1571 n.3. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

*Recinos*, 23 I. & N. Dec. 175, 177 (BIA 2001). Because the BIA determined that the federal perjury statute and section 118(a) of the California Penal Code were "essentially the same," section 118(a) qualified as an "offense relating to . . . perjury." *Id.* We then held that this interpretation was not entitled to deference on the ground that the BIA had failed to perform a survey to determine the "contemporary usage" of the term "perjury." *Yim v. Lynch*, 610 F. App'x 672, 673 (9th Cir. 2015). Accordingly, we remanded to the BIA with instructions that it survey definitions of perjury codified in state statutes, adopted by the Model Penal Code, and endorsed by scholarly commentary. *See id.* at 672–73 (citing *Garcia-Santana*, 774 F.3d at 534).

In a subsequent opinion, *Matter of Alvarado*, the BIA surveyed the sources mentioned above. 26 I. & N. Dec. 895, 898–900 (BIA 2016). It first looked to the common-law definition of perjury. *Id.* at 898. "At common law, perjury was defined as 'a crime committed when a lawful oath is administered, in some judicial proceeding, to a person who swears willfully, absolutely, and falsely, in a matter material to the issue or point in question." *Id.* (quoting 4 William Blackstone, Commentaries on the Laws of England, 136–37 (1769)). The BIA reasonably recognized, however, that the common-law definition of perjury was merely a starting point for defining "perjury," as used in 8 U.S.C. § 1101(a)(43)(S). *See, e.g.*, *Taylor*, 495 U.S. at 593 (rejecting the argument that burglary carried its common-law meaning because "[o]nly a few States retain the common-law definition, or something closely resembling it"); *Garcia-Santana*, 774 F.3d at 539 (rejecting the argument that "conspiracy" carried its common-law meaning because only a small minority of jurisdictions retained "the common-law definition of conspiracy," which did not require an overt act).

The BIA then considered the Model Penal Code and explained that it "slightly expanded the common law definition of perjury by proscribing false statements made 'in any official proceeding,' not just those made in 'judicial' proceedings." *Matter of Alvarado*, 26 I. & N. Dec. at 898 (citing Model Penal Code § 241.1(1) (1985)). Specifically, "[a] person is guilty of perjury . . . if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is material and he does not believe it to be true." Model Penal Code § 241.1(1). The Model Penal Code broadly defines an "official proceeding" as "a proceeding heard or which may be heard before any legislative, judicial, administrative or other governmental agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner, notary or other person taking testimony or deposition in connection with any such proceeding." Model Penal Code § 240.0(4). Thus, by proscribing false statements made "in any official proceeding," a perjury offense could occur "before any legislative, judicial, administrative or other governmental agency or official authorized to take evidence under oath." *Matter of Alvarado*, 26 I. & N. Dec. at 898 (quoting Model Penal Code § 240.0(4)).

After consulting the Model Penal Code, the BIA explained that "States' perjury laws have many similarities to the common law and Model Penal Code definitions." *Id.* At the time the phrase "an offense relating to . . . perjury" was added to 8 U.S.C. § 1101(a)(43)(S) in 1996, the majority of states defined perjury to require, at the least, "(1) a material (2) false statement (3) made knowingly or willfully (4) while under oath, affirmation, or under penalty of perjury." *Id.*

(footnote omitted).**[3]**   In addition to these elements, the majority of states also "required that the witness take [an] oath in an 'official proceeding,' or in a proceeding where an oath was either 'required or authorized by law.'" *Id.* at 899 (footnotes omitted) (collecting statutes).

Finally, the BIA consulted the federal perjury statute, 18 U.S.C. § 1621. *Id.* at 900. In 1996, as now, the statute provided,

> Whoever—
>
> (1) having taken an oath before a competent tribunal, officer, or person in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or
>
> (2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28,

---

**[3]** The BIA explained that "[s]ome States had a 'knowing' mens rea in their perjury statutes, while others included a 'willful' requirement." *Matter of Alvarado*, 26 I. & N. Dec. at 898 n.5. But "these states of mind are not meaningfully distinguishable because courts have uniformly interpreted the willfulness requirement of perjury to mean that the defendant *knowingly* made the false statement." *Id.* (citing *Bronston v. United States*, 409 U.S. 352, 359 (1973); *Matter of Esqueda*, 20 I. & N. Dec. 850, 858 (BIA 1994); Model Penal Code § 2.02(8)).

United States Code, willfully subscribes as true any material matter which he does not believe to be true;

is guilty of perjury.

Pub. L. No. 94-550, § 2, 90 Stat. 2534, 2534–35 (1976) (codified at 18 U.S.C. § 1621). The federal statute, like some state statutes, broadly extends to "unsworn declarations prepared under penalty of perjury." Scott Mah et al., *Perjury*, 57 Am. Crim. Law Rev. 1115, 1117 (2020) (citing 18 U.S.C. § 1621(2)). The BIA reasonably "presume[d] that Congress was familiar with 18 U.S.C. § 1621 when it enacted [8 U.S.C. § 1101(a)(43)(S)]." *Matter of Alvarado*, 26 I. & N. Dec. at 900 (citing *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)).

Having surveyed the relevant authorities, the BIA concluded that "the generic definition of the term 'perjury' in [8 U.S.C. § 1101(a)(43)(S)] requires that an offender [1] make a material false statement [2] knowingly or willfully [3] while under oath or affirmation [or penalty of perjury] [4] where an oath is authorized or required by law." *Id.* at 901 & n.11. The definition "incorporates false statements made orally and in writing under penalty of perjury." *Id.* at 901 n.11. The BIA's definition does not require that the relevant statement be made in a proceeding. *Id.* at 899–900 (footnotes omitted).

We conclude that this is a "permissible construction of the statute." *Parrilla*, 414 F.3d at 1041 (citation omitted). The BIA surveyed the definitions of perjury recognized at common law, "codified in state and federal statutes," and "adopted by the Model Penal Code," *Garcia-Santana*,

774 F.3d at 534, and the BIA reasonably settled on a definition of perjury compatible with these sources. As such, the BIA's definition of perjury is not "clearly contrary to the plain meaning of the statute." *Parrilla*, 414 F.3d at 1041. Therefore, we defer to the BIA's determination.

2

In arguing against this conclusion, Yim contends that it was not reasonable for the BIA to omit a requirement that a statement be made in an "official proceeding" or a "proceeding where an oath [is] either 'required or authorized by law.'" To support this, Yim points to the fact that the BIA "identified only seven states as not requiring that the oath be made in a proceeding."

We reject this argument. First, the federal perjury statute, 18 U.S.C. § 1621, supports the BIA's omission of a "proceeding" requirement. Section 1621(2) provides that a person is guilty of perjury if he "willfully subscribes as true any material matter which he does not believe to be true" "in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code." 18 U.S.C. § 1621(2).[4] Section 1621(2) does not require that the statement be made in a "proceeding," and the BIA could reasonably rely on 18 U.S.C. § 1621 "to discern the elements of generic

---

[4] Section 1746 sets forth the required form for declarations under penalty of perjury when, "under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same." 28 U.S.C. § 1746.

perjury." *Matter of Alvarado*, 26 I. & N. Dec. at 900 (citation omitted).[5] In fact, it would be unreasonable for the generic definition of perjury to include a "proceeding" requirement, as Yim contends, because then conduct that meets Congress's definition of "perjury" for 18 U.S.C. § 1621(2) would not constitute "perjury" under 8 U.S.C. § 1101(a)(43)(S). We typically interpret statutes in a way that avoids such incongruity. *See Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 879 (1994) ("[C]ourts should construe statutes . . . to foster harmony with other statutory and constitutional law."). Thus, although the federal perjury statute might not supply the "complete or exclusive definition" of "perjury," *Esquivel-Quintana*, 137 S. Ct. at 1571, it strongly supports the BIA's decision to omit a proceeding requirement, *see Renteria-Morales*, 551 F.3d at 1086 (holding that "the BIA acted reasonably in deriving the definition of 'obstruction of justice' for purposes of § 1101(a)(43)(S) from the body of federal statutes imposing criminal penalties on obstruction-of-justice offenses").

Second, in discerning Congress's intent, the BIA may survey a variety of sources and it is not bound to adopt the definition of an offense used by a majority of the states.

---

**[5]** To the extent Yim argues that the federal perjury statute, 18 U.S.C. § 1621, includes a proceeding requirement, he is mistaken. Section 1621(2) extends to "unsworn declarations prepared under penalty of perjury," Scott Mah et al., *Perjury*, 57 Am. Crim. Law Rev. 1115, 1117 (2020) (citing 18 U.S.C. § 1621(2)), which do not need to be prepared in connection with a "proceeding," *see* 28 U.S.C. § 1746; *United States v. Gomez-Vigil*, 929 F.2d 254, 258 (6th Cir. 1991) ("Section 1746 authorizes the use of unsworn declarations under penalty of perjury, rather than sworn declarations under oath, whenever the law, rule, regulation, or order or requirement *permits* the matter to be supported, evidenced, established or proved by sworn declaration.").

Indeed, the BIA need not in engage in a multi-jurisdictional analysis at all. *Esquivel-Quintana*, 137 S. Ct. at 1571 n.3; *cf. Garcia-Santana*, 774 F.3d at 534. Here, the BIA reasonably placed significant weight on the federal definition of perjury, *Matter of Alvarado*, 26 I. & N. Dec. at 900, and confirmed the reasonableness of this choice by identifying a number of states that likewise do not include a "proceeding" requirement in their definition of perjury.**[6]** The BIA reasonably considered these definitions as evidencing the contemporaneous understanding of the elements of perjury and bolstering its conclusion regarding congressional intent. *See Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1152–53 (9th Cir. 2008) (en banc) (bolstering its interpretation of the generic offense of "sexual abuse of a minor" by "survey[ing] current criminal law," even though it was "unnecessary" to do so because Congress had defined "sexual abuse of a minor" in a parallel federal offense), *overruled on other grounds as recognized by United States v. Rivera-Constantino*, 798 F.3d 900, 904 (9th Cir. 2015).

3

Velasquez argues that the BIA's interpretation is unreasonable because the BIA's decision to "survey the contemporary definition of perjury [was] unexplained" and "there is no evidence that Congress intended anything other than the federal definition of perjury under 18 U.S.C. § 1621." We reject these arguments. The BIA surveyed contemporary definitions of perjury because we told it to do

---

**[6]** *See* Alaska Stat. Ann. §§ 11.56.200, 11.56.240; Ariz. Rev. Stat. Ann. § 13-2702; Cal. Penal Code § 118(a); Iowa Code Ann. §§ 622.1, 720.2; Nev. Rev. Stat. Ann. § 199.145; R.I. Gen. Laws Ann. § 11-33-1; Tenn. Code Ann. § 39-16-702.

so, *see Yim*, 610 F. App'x at 672–73, and such a survey can "aid [the] interpretation" of a generic offense by "offering useful context," *see Esquivel-Quintana*, 137 S. Ct. at 1571 n.3.

4

In sum, we "may not supply the interpretation of the statute we think best (as we would without an agency pronouncement)" and must instead ask whether the BIA's interpretation of perjury was "based on a permissible construction of the statute." *Marmolejo-Campos*, 558 F.3d at 908 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)). The BIA's approach to determining the elements of the generic offense of perjury was consistent with Supreme Court guidance as well as our own: the BIA surveyed relevant sources and settled on a definition of perjury that was consistent with the federal perjury statute and a number of state criminal codes. Because the BIA's definition is "not clearly contrary to the plain meaning of the statute," *Parrilla*, 414 F.3d at 1041, we conclude that it is entitled to deference.

B

Having accepted the BIA's definition of the generic offense, we now turn to the second step of the categorical approach and ascertain the elements of the state statute of conviction. Section 118(a) provides:

> [1] Every person who, having taken an oath that he or she will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which

the oath may by law of the State of California be administered, willfully and contrary to the oath, states as true any material matter which he or she knows to be false, and [2] every person who testifies, declares, deposes, or certifies under penalty of perjury in any of the cases in which the testimony, declarations, depositions, or certification is permitted by law of the State of California under penalty of perjury and willfully states as true any material matter which he or she knows to be false, is guilty of perjury.

Cal. Penal Code § 118(a).

By its terms, section 118(a) criminalizes both oral and written perjury. *Matter of Alvarado*, 26 I. & N. Dec. at 901 (citing *Rivera v. Lynch*, 816 F.3d 1064, 1071–72 (9th Cir. 2016)). For oral perjury cases, the elements of a section 118(a) offense are: "a [1] willful statement, [2] under oath, [3] of any material matter [4] which the witness knows to be false." *Rivera*, 816 F.3d at 1072 (quoting *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004)).[7] For written perjury cases, the false statement must be "in writing under penalty of perjury" in circumstances "permitted by law," as opposed

---

[7] *See also* Cal. Jury Inst. Crim. (CALJIC) No. 7.20 ("Every person who, [1] having taken an oath to (testify, declare, etc.) truly before any competent tribunal, officer, or person, in any of the cases in which the oath may by law be administered, [2] willfully and contrary to the oath, [3] states as true any material matter [4] which he or she knows to be false, is guilty of the crime of perjury in violation of Penal Code section 118.").

to "under oath." *Id.*[8] The other elements—willfulness, materiality, and falsity—remain the same. *See id.* Accordingly, the elements of perjury under section 118(a) are: (1) a willful statement, (2) either (a) under oath in any of the cases in which the oath may be administered or (b) in writing under penalty of perjury in circumstances permitted by law, (3) of any material matter, and (4) which the person knows to be false. *See Rivera*, 816 F.3d at 1072; CALJIC No. 7.20; CALJIC No. 7.21.

C

We now turn to the third step of the categorical approach. Given the language of 8 U.S.C. § 1101(a)(43)(S), we must determine whether perjury in violation section 118(a) of the California Penal Code "relat[es] to" the BIA's generic definition of perjury. To do so, we begin, as we normally do, by determining whether the state offense is a categorical match with the generic offense, meaning that the state offense criminalizes the same amount of conduct (or less) as the generic offense. *See Sullivan*, 797 F.3d at 635. Once we complete this comparison, we turn to the question whether the state offense "relat[es] to" the BIA's generic definition of perjury. *See id.* at 636; *Sinerius*, 504 F.3d at 743. Here, the petitioners direct our attention to four distinct elements: (1) intent; (2) false statement; (3) materiality; and (4) authorized or permitted by law.

---

[8] *See also* CALJIC No. 7.21 ("Every person who [1] (testifies, declares, etc.) under penalty of perjury [2] in any of the cases in which (testimony, declarations, etc.) under penalty of perjury [are] permitted by law, [3] willfully states as true any material matter [4] which he or she knows to be false, is guilty of the crime of perjury in violation of Penal Code section 118.").

1

We begin with the intent element. Section 118(a) requires an intent of "willful[]," Cal. Penal Code § 118(a), and the BIA's generic definition of perjury require the intent of "knowingly or willfully," *Matter of Alvarado*, 26 I. & N. Dec. at 902. Because there is no meaningful difference between "knowingly" and "willfully" in this context, the BIA's use of both terms has no effect here. As the BIA explained, "courts have uniformly interpreted the willfulness requirement of perjury to mean that the defendant *knowingly* made the false statement." *Id.* at 899 n.5 (citing *Bronston*, 409 U.S. at 359; *Matter of Esqueda*, 20 I. & N. Dec. at 858; Model Penal Code § 2.02(8)). "The terms 'corruptly,' 'willfully,' 'intentionally,' and 'knowingly' are sprinkled freely through [perjury] statutes, as is the more helpful phrase, 'not believing the statement to be true,'" but "[t]here does not appear to be a significant distinction among the statutes based on the use of these different terms." Sara Sun Beale et al., Grand Jury Law & Practice § 11:6 (2d ed. 2019). Thus, we conclude that there is a match between the intent required by section 118(a) and the intent required by the BIA's generic definition of perjury.

2

We next turn to the false-statement requirement. Both section 118(a) and the BIA's generic definition of perjury require a false statement. The BIA's generic definition refers to a "false statement," *Matter of Alvarado*, 26 I. & N. Dec. at 901, whereas section 118(a) refers to a person "stat[ing] as true any . . . matter which he or she knows to be false," Cal. Penal Code § 118(a). These requirements are materially indistinguishable.

Arguing against this conclusion, Borba points to section 125 of the California Penal Code, which provides, "An unqualified statement of that which one does not know to be true is equivalent to a statement of that which one knows to be false." Cal. Penal Code § 125. According to Borba, this means that a person can be convicted of perjury in violation of section 118(a) without making a *literally* false statement, and therefore section 118(a) criminalizes more conduct than the BIA's generic definition of perjury.

We disagree. The BIA's definition of perjury inherently incorporates the longstanding common-law view that a witness gives false testimony if the witness states any matter as true when, in fact, the witness is entirely ignorant as to the matter. *See* 3 Edward Coke, Institutes of the Laws of England 166 (Brooke ed. 1797) (stating that two witnesses were guilty of perjury when they swore to the value of goods but "because they knew it not, it was a false oath in them, for . . . which both the . . . witnesses were sentenced in the star-chamber"). As one early commentator explained:

> It . . . is not to be material whether the fact which is sworn be in itself true or false; for howsoever the thing sworn may happen to prove agreeable to the truth, yet if it were not known to be so by him who swears to it, his offense is altogether as great as if it had been false, inasmuch as he wilfully swears, that he knows a thing to be true, which at the same time he knows nothing of, and impudently endeavours to induce those before whom he swears to proceed upon the credit of a deposition, which any stranger might make as well as he.

1 William Hawkins, A Treatise of the Pleas of the Crown 433 (8th ed. 1824); *accord* 2 Joseph Chitty, A Practical Treatise of Criminal Law 153–54 (Riley's ed. 1819) (noting that if a witness "asserts that which may happen to be true, without any knowledge of the fact, he is equally criminal, and the accidental truth of his evidence will not excuse him").

The modern understanding of perjury incorporates the principle that a false statement includes an unqualified statement made without knowledge as to its truth or falsity. A number of states, like California, codified this principle,[9] while others confirmed it through judicial decisions.[10] The federal perjury statute likewise incorporates this principle; it refers to statements of "any material matter which [the declarant] does not believe to be true," 18 U.S.C. § 1621(1), (2), which covers "cases in which the witness makes a false statement without knowing whether the statement is true or

---

[9] *See, e.g.*, Idaho Code Ann. § 18-5408; La. Stat. Ann. § 14:123(B); Nev. Rev. Stat. Ann. § 199.200; S.D. Codified Laws § 22-29-2; Wash. Rev. Code Ann. § 9A.72.080.

[10] *See, e.g.*, *E. Ky. Rural Elec. Co-op. Corp. v. Phelps*, 275 S.W.2d 592, 594 (Ky. 1955) ("[T]here is ample authority for the proposition that a prosecution [for perjury] can be sustained upon . . . an affidavit, if it is proved that the affiant did not in fact believe the facts asserted, or had no probable grounds for believing such facts were true."); *State v. Rupp*, 151 P. 1111, 1112 (Kan. 1915) ("[H]e who makes a positive affidavit to a particular condition thereby holds himself out as having some reasonably reliable information on the subject, and for one to swear to a fact, of the existence of which he knows himself to be entirely ignorant, is rightly held to constitute perjury."); *Butler v. State*, 429 S.W.2d 497, 502 (Tex. Crim. App. 1968) ("A witness may commit perjury if he swears to a matter about which he consciously has no knowledge. The effect of such testimony is that the witness declares that he knows the truth of what he states, and, if he is conscious he does not know it, he means to swear falsely.").

not," Sara Sun Beale et al., Grand Jury Law & Practice § 11:6 n.7 (2d ed. 2019). In short, "[a] person may be guilty of perjury when he swears to a particular fact, without knowing at the time whether it is true or false, or without having enough knowledge to support a belief that it is true, even though the statement is in fact true." 4 Wharton's Criminal Law § 577 (15th ed. 2019) (collecting sources). Borba has identified no authority casting doubt on this centuries-old principle.[11]

Given this backdrop, we understand the phrase "false statement," as used in the BIA's generic definition of perjury, *Matter of Alvarado*, 26 I. & N. Dec. at 901, to include statements made by a declarant who is entirely ignorant as to the statement's truth or falsity. Accordingly, we conclude that the reference to "false statement" in the BIA's generic definition is the same as the reference to "false" statements in section 118(a), notwithstanding section 125.

---

[11] Borba cites *Bronston v. United States*, 409 U.S. 352 (1973), for the proposition that "[f]or a federal perjury charge . . . the statement cannot support a perjury conviction if the information is [true]." This is wrong. *Bronston* "consider[ed] a narrow but important question in the application of the federal perjury: whether a witness may be convicted of perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication." 409 U.S. at 352–53. Thus, we have explained that "*Bronston*'s rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked." *United States v. Camper*, 384 F.3d 1073, 1076 (9th Cir. 2004). *Bronston* therefore does not address the situation contemplated by section 125.

3

We next turn to the element of "materiality." Both section 118(a) and the BIA's generic definition of perjury require that the statement be "material." Although these terms are identical, Borba nevertheless contends that section 118(a) criminalizes more conduct than the BIA's generic definition because in California "[i]t is no defense to a prosecution for perjury that the accused did not know the materiality of the false statement made by him," Cal. Penal Code § 123, while, according to Borba, the BIA's generic definition of perjury "likely" does not cover situations where a defendant lacks knowledge as to a statement's materiality.

We reject this argument. At common law, it was "not necessary that the witness know that the testimony is material," 60A Am. Jur. 2d Perjury § 26 (2d ed. 2020) (collecting sources), and so "[a] mistaken belief that [a] statement was not material is not a defense to perjury," 110 Am. Jur. Proof of Facts 3d 479 (2009). The states uniformly adopted these principles, *see, e.g.*, *State v. Sargood*, 68 A. 49, 50 (Vt. 1907) ("We are referred to no authority, and have seen none, that treats knowledge of the materiality as an element of [perjury]."), with many states, like California, codifying this understanding.[12] The Model Penal Code is in accord. *See* Model Penal Code § 241.1(2) ("It is no defense that the declarant mistakenly believed the falsification to be immaterial."). Borba cites no federal case that has interpreted the federal perjury statute, 18 U.S.C. § 1621, as requiring proof that a witness know that a false

---

[12] *See* Ark. Code Ann. § 5-53-102(b); Colo. Rev. Stat. Ann. § 18-8-502(2); Fla. Stat. Ann. §§ 837.02(3), 837.012(2); Minn. Stat. Ann. § 609.48(3); Mo. Ann. Stat. § 575.040; 18 Pa. Stat. Ann. § 4902(b).

statement is material, and we are aware of none. *Cf. United States v. Schaier*, 175 F. Supp. 838, 842 (S.D.N.Y. 1959) ("The defendant may be convicted even though he did not know that his statement was material."). We therefore conclude that the BIA's generic definition of perjury is in accord with the uniform principle that a declarant need not know that a statement is material to be guilty of perjury. Accordingly, we reject Borba's argument that section 118(a) criminalizes more conduct than the BIA's generic definition of perjury because California chose to codify this common law principle in section 125.

4

Finally, we consider the requirement that an oath, affirmation, or declaration under penalty of perjury be authorized or permitted by law. Section 118(a) refers to "cases in which [an] oath may by law of the State of California be administered" and situations where "certification is permitted by law of the State of California under penalty of perjury." Cal. Penal Code § 118(a). The BIA's generic definition simply refers to the situation "where an oath is authorized or required by law." *Matter of Alvarado*, 26 I. & N. Dec. at 901. Yim contends that there is a difference between a certification being "authorized by law" and being "permitted by law."

We disagree. Despite the slight difference in the verbal formulations in section 118(a) and the BIA's generic definition, they are materially identical. To show that a statute criminalizes more conduct than a generic offense, a petitioner "must at least point to his own case or other cases in which the state court in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales*

*v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Here, Yim identifies no case in which a person was found guilty of violating section 118(a) when an oath was "permitted" but not "authorized" by law. Moreover, the California Court of Appeal has stated that an "authorized" oath is the same as an oath that is "permitted by law." *People v. Laws*, 120 Cal. App. 3d 1022, 1034 (1981) (stating that a declaration in support of a motion "is a declaration for which an oath is 'authorized,' i.e., one which is 'permitted by law'"). Thus, even if there is some semantic difference between "permitted by law" and "authorized by law," Yim fails to show that there is a "realistic probability," as opposed to a "theoretical" one, that section 118(a) is applied in a way that it is broader than the BIA's generic offense. *Duenas-Alvarez*, 549 U.S. at 193. We therefore reject the argument that there is some meaningful difference between the phrases "authorized by law" and "permitted by law."

## D

Our analysis has thus far established that the elements of section 118(a) and the elements of the generic federal offense are a categorical match. The petitioners raise two final arguments against this conclusion. According to the petitioners, California law recognizes two affirmative defenses to perjury that are not incorporated into the federal generic offense, and so the offenses are not a categorical match. First, Borba argues that section 118(a) criminalizes more conduct than the BIA's generic definition of perjury because section 122 provides that lack of competency is not a defense to a prosecution under section 118(a). Cal. Penal

Code § 122.**[13]**  Second, Velasquez argues that section 118(a) differs from the BIA's generic definition of perjury because section 118(b) provides, "No person shall be convicted of perjury where proof of falsity rests solely upon contradiction by testimony of a single person other than the defendant." Cal. Penal Code § 118(b).

These arguments misunderstand the nature and effect of an affirmative defense. "Affirmative defenses are complete defenses that, once proven by the defendant, negate criminal liability for an offense, notwithstanding the government's ability otherwise to prove all elements of that offense beyond a reasonable doubt." *United States v. Davenport*, 519 F.3d 940, 945 (9th Cir. 2008). As we have recognized, the availability (or unavailability) of an affirmative defense "is not relevant to the categorical approach" because "we 'look only to the fact of conviction and the statutory definition of the prior offense.'" *United States v. Velasquez-Bosque*, 601 F.3d 955, 963 (9th Cir. 2010) (quoting *Taylor*, 495 U.S. at 602). The existence or non-existence of "extraneous affirmative defenses" is therefore "irrelevant to the categorical approach." *United States v. Albino-Loe*, 747 F.3d 1206, 1213 (9th Cir. 2014).

On its face, section 118(b) merely elaborates on the government's evidentiary burden for proving perjury: proof of falsity may not rest "solely upon contradiction by testimony of a single person other than the defendant." Cal.

---

**[13]** Section 122 provides, "It is no defense to a prosecution for perjury that the accused was not competent to give the testimony, deposition, or certificate of which falsehood is alleged. It is sufficient that he did give such testimony or make such deposition or certificate." Cal. Penal Code § 122.

Penal Code § 118(b). As such, it does not change the elements of perjury set forth in section 118(a). Therefore, section 118(b) has no bearing on our analysis as to whether section 118(a) is a categorical match for the federal generic offense of perjury. *See Rivera*, 816 F.3d at 1069 n.1. Accordingly, we reject Velasquez's argument.

We next consider section 122, which provides that lack of competency is "no defense to a prosecution for perjury." Cal. Penal Code § 122. In California, the general rule is that "every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter." Cal. Evid. Code § 700. But there is an exception for persons who are incompetent to testify. Under section 701 of the California Evidence Code, "[a] person is disqualified to be a witness if he or she is," among other things, "[i]ncapable of understanding the duty of a witness to tell the truth." Cal. Evid. Code § 701.[14]

---

[14] Section 701 provides, in full:

> (a) A person is disqualified to be a witness if he or she is:
>
> (1) Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him; or
>
> (2) Incapable of understanding the duty of a witness to tell the truth.
>
> (b) In any proceeding held outside the presence of a

Section 122 prevents a defendant charged with perjury from raising the affirmative defense that the defendant did not "understand the duty of a witness to tell the truth." Cal. Evid. Code § 701(2). This limitation does not, however, alter the elements of the offense of perjury. The government must still prove beyond a reasonable doubt that the defendant stated "as true any material matter which he or she knows to be false," Cal. Penal Code § 118(a), and the defendant may still negate the mens rea element of the offense by raising reasonable doubt as to whether he or she knew a statement was false, *see, e.g.*, *People v. Von Tiedeman*, 120 Cal. 128, 136 (1898) ("[P]erjury cannot be willful where the oath is according to the belief and conviction of the witness as to its truth."). Because eliminating a defense regarding lack of understanding about a witness's duty does not cause section 118(a) to criminalize more conduct than the generic offense of perjury, section 122 is irrelevant for purposes of applying the categorical approach. *See Albino-Loe*, 747 F.3d at 1213; *Velasquez-Bosque*, 601 F.3d at 963. Therefore, we also reject Borba's argument.

In sum, neither section 118(b) nor section 122 alter the "statutory definition of the . . . offense" set forth in section 118(a), *Velasquez-Bosque*, 601 F.3d at 963 (citation omitted); *see Rivera*, 816 F.3d at 1069 n.1, and so they have no bearing on our analysis here.

---

jury, the court may reserve challenges to the competency of a witness until the conclusion of the direct examination of that witness.

Cal. Evid. Code § 701.

E

Having considered the petitioners' arguments, we conclude that section 118(a) of the California Penal Code is a categorical match with the BIA's generic definition of perjury, meaning they cover the same amount of conduct. We therefore conclude that section 118(a) is an "offense relating to . . . perjury."  8 U.S.C. § 1101(a)(43)(S).  We dispose of the petitions and any remaining arguments in concurrently filed memorandum dispositions.

**IT IS SO ORDERED**.